UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**SCOTT KOEBLER**
    Plaintiff

**v.**                                                                                      **No. 5:06CV-00152-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Craig Housman. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 12, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on August 18, 2005, by administrative law judge (ALJ) Randolph Schum. In support of his decision denying Title II and Title XVI benefits, Judge Schum entered the following numbered findings:

    1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

    2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    3. The claimant is status-post lumbar injury and surgery, with transitory radiculopathy into the right leg, a "severe" impairment based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).

      4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

      5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

      6. The claimant has the residual functional capacity to perform the full range of medium work activity. The claimant can lift/carry 50 pounds occasionally and 25 pounds frequently and push/pull within these weights. The claimant can stand and/or walk a combined total of six hours per day and he can sit for six hours per day, all with normal rest and meal breaks about every two hours. The claimant has no significant postural, environmental, manipulative, visual or communicative limitations.

      7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

      8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

      9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

      10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

      11. The claimant has the residual functional capacity to perform the full range of medium work (20 CFR §§ 404.1567 and 416.967).

      12. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.28.

      13. The claimant is not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 20-21).

## Governing Legal Standards

      1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four"

jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and

must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

    3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually

performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

On December 27, 2003, while working for a chicken barn, the plaintiff experienced a work-related injury. While in a squatting position, he was trying to adjust a feed hopper that weighed over 200 pounds. The hopper was connected by a cable. The cable came loose, and the plaintiff attempted to prevent it from tipping over. The weight of the hopper tipped him to the right and onto the ground. Thereafter, he developed pain radiating down the right leg into his foot. On September 15, 2004, the plaintiff's treating neurosurgeon, Theodore E. C. Davies, performed a microendoscopic diskectomy at the L5-S1 level on the right side to repair a disc herniation. A pre-operative MRI as well as Dr. Davies' own observations during surgery provided "clear-cut" and "obvious evidence of nerve root impingement with an S1 radiculopathy" (AR, pp. 212, 213, and 221). The plaintiff alleges disability due to back pain and radicular symptoms affecting the right lower extremity due to scar tissue and granulation tissue extending along the right aspect of the thecal sac and partial encasement of the right L5 and S1 nerve root at the site of the diskectomy.

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony at the administrative hearing of a vocational expert (VE). The VE testified that an individual who retains the ability to engage in "medium" work, including standing/walking six hours per work day, sitting six hours a day, etc., as contemplated by ALJ's Finding No. 6, can perform a significant number of jobs in the national economy. The plaintiff argues that the substantial weight of the evidence in this case dictates a conclusion that he cannot perform even "sedentary" work. Hence, a judicial award of benefits is appropriate.

The evidence upon which the plaintiff relies is in the form of a deposition of Dr. Davies that counsel conducted on July 18, 2005 (AR, pp. 208-218). Dr. Davies testified, in pertinent part, as follows (AR, pp. 215-217):

1. A postoperative MRI from January of 2005, shows that the plaintiff is "one of those unfortunate folks who's had more extensive than normal scarring." Although the MRI report is not in the administrative record, a copy is appended to the plaintiff's fact and law summary (Docket Entry No. 10, Exhibit No. 5).

2. Dr. Davies described the exact location of the "granulation tissues extending along the right aspect of the thecal sac and partial encasement of the right L5 and S1 nerve root."

3. Dr. Davies has never released the plaintiff to return to any type of work.

4. Within a reasonable degree of medical probability, the plaintiff suffers from an objectively-verifiable medical condition that would preclude the plaintiff's ability to "show up [and] stay at the workplace for eight hours, or close to it, five days a week ... on a regular and sustained basis."

5. The plaintiff would be expected to have numerous absences from work and a need to lie down often on account of flare-ups of back pain and radicular symptoms.

6. On May 10, 2005, Dr. Davies' office staff observed that the plaintiff's gait was antalgic to the right and he was experiencing a palpable muscle spasm above the right posterior iliac crest.

The plaintiff claims that he is disabled by the residual effects of postoperative scar tissue including chronic back pain and radicular symptoms affected the right lower extremity. A similar claim was presented in *Mostacchio v. Commissioner*, 1996 WL 51860 (N.D.Ill.,1996), wherein it was observed that "[a]s a complication of his surgery, it now appears that scar tissue has developed at the site of his diskectomy. This scar tissue may account for the radicular symptoms including back pain, leg pain, and leg numbness." In the present case, the vocational expert (VE) testified that the level of absenteeism and need for recumbent rest described by the plaintiff would be incompatible with any type of full-time employment (AR, p. 264). The magistrate judge concludes that, if the medical opinions expressed by Dr. Davies in his deposition on July 28, 2005, are entitled to controlling weight, the evidence adequately shows that the plaintiff is incapable of performing even "sedentary" work and, hence, a judicial award of benefits is warranted.

A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. An ALJ's failure to identify "good reasons" is a reversible error even if the Commissioner or the court could identify such reasons on its own initiative. *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir., 2004).

In his written decision, the ALJ offered several reasons for declining to give controlling weight to Dr. Davies' medical opinions. For the following reasons, the magistrate judge concludes that none is persuasive. Each reason cited by the ALJ shall be identified below in a separate single-spaced numbered paragraph with the magistrate judge's findings and conclusions to follow:

> 1. "While Attorney Housman obtained a statement from Dr. Davies shortly before the hearing and Dr. Davies' refers to portions of the [postoperative] MRI [from January of 2005] in his statement, the actual MRI report has not been submitted to the undersigned for review and is not part of the objective record" (AR, p. 15). According to the Commissioner, the court should decline to consider the postoperative MRI report, which shows the presence of extensive scarring, and Dr. Davies' testimony predicated thereupon because the plaintiff has failed to establish "good cause" for not submitting the MRI report to the ALJ in a timely manner (Docket Entry No. 14, p. 10).

Dr. Davies' deposition testimony was specifically made a part of the record at the administrative hearing. In his closing remarks at the hearing, counsel clearly summarized the major points contained in Dr. Davies' deposition as summarized above (AR, pp. 264). A treating physician's testimony constituted substantial evidence regardless of whether counsel submitted all of the documentary evidence which informed and supported that testimony. The fact that the postoperative MRI was not in the administrative record is immaterial for purposes of the present substantial evidence review.

> 2. Dr. Davies' "records clearly indicate that the follow up [postoperative] examinations were performed by Frank Burch, a physician's assistant [PA], and not by Dr. Davies himself. The opinions and observations of a [PA] are not entitled to the same deference as those of the treating physician himself" (AR, p. 18).

Dr. Davies testified that he ordered a follow-up postoperative MRI in December of 2004, in light of the complaints of ongoing pain and radicular symptoms which the plaintiff related to the doctor (AR, pp. 213-214). The opinions expressed by Dr. Davies in his deposition appear to have been based primarily upon Dr. Davies' own a conclusion that the postoperative MRI revealed an objective

8

medical basis for the plaintiff's complaints rather than upon any particular observations by the PA. In any event, at the bottom of all of the PA's notations, there is a statement that the notations have been "viewed and signed off electronically by Theodore E. C. Davies MD" (AR, pp. 179-198). The evidence as a whole reflects that Dr. Davies had personal knowledge of all relevant medical facts that supported his deposition testimony.

> 3. In his written decision, the ALJ repeatedly refers to his own personal medical research from which he opines that the endoscopic procedure performed by Dr. Davies is "the least invasive technique" with "less likelihood of disabling scarring" (AR, pp. 17 and 18). The ALJ repeatedly cites to a medical journal article authored by two neurosurgeon from Memphis, Tennessee, touting the favorable outcomes their patients experienced from their new surgical solution to back pain. The article was published in 1998, in the newsletter of the *American Association of Neurological Surgeon and the Congress of Neurological Surgeons Joint Section on Pain*. According to the ALJ, the article states that "[t]he enoscopic *(sic.)* approach allows for a smaller incision and less tissue trauma than standard open microdiscectomy" and that, out of 41 patients, the "return to work ranged from 2 ... to 107 days" (AR, p. 17).

Dr. Davies acknowledged that the procedure he performed "is for the most part least invasive" (AR, p. 215). However, the plaintiff "for some reason, had more scarring than might be expected" (AR, p. 215). The ALJ simply refused to acknowledge that, despite a decreased likelihood of extensive scarring, such scarring, in fact, occurred in the plaintiff's case.

The plaintiff also objects to the ALJ's reliance upon his own personal medical research. In his fact and law summary, the Commissioner acknowledges that Hallex I-2-8-25(D) provides that an ALJ should not cite a medical treatise "as the authority for resolving any issue" (Docket Entry No. 14, p. 8). The Commissioner's position is that the ALJ did not do this. The argument is unpersuasive because, if the ALJ did not intend the treatise to have a bearing upon the resolution of any issue, it is not apparent why the ALJ cited it in his written decision.

It would, of course, be just as inappropriate for this court to cite a medical treatise by way of rebuttal of the ALJ's research and conclusions. Nevertheless, for the limited purpose of illustrating the dangers inherent in citation to medical treatises by lay persons, including this court, the magistrate judge notes that www.neurosurgery-online.com contains an abstract of the results of a study in 1996, that purports to establish the following:

> Patients having extensive peridural scar were 3.2 times more likely to experience recurrent radicular pain than those patients with less extensive peridural scarring. In conclusion, this prospective, controlled, randomized, blinded, multicenter study has demonstrated that there is a significant association between the presence of extensive peridural scar and the occurrence of recurrent radicular pain.

In other words, where extensive scarring is, in fact, present, one should expect recurrent radicular symptoms such as those alleged by the plaintiff. The ALJ erred in going beyond the medical evidence of record and "playing doctor."

> 4. "The undersigned finds the residual functional capacity of the non-examining consultative physician, A. Guerrero, M.D., of December 8, 2004, to be consistent with the medical evidence of a surgical site that is well-healed and with a lack of radiculitis as well as with the previously cited study by the neurosurgeons in Memphis. ... The undersigned finds that the State Agency physician has produced a credible assessment of the claimant's residual functional capacity and is persuaded to accept it" (AR, p. 19).

"[T]he opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." Shelman v. Secretary, 821 F.2d 316, 321 (6th Cir., 1987). Dr. Guerrero's medical speciality is psychiatry (AR, p. 137). It appears that Dr. Guerrero simply signed off on the physical assessment form, which was completed by an unknown employee of the state agency Disability Determination Service (AR, pp. 189-197). That employee acknowledged that the file before him/her contained no statement from any treating or examining source bearing

on the issue of the claimant's physical capacities (AR, p. 195). At the hearing, counsel argued that Dr. Guerrero's assessment from December of 2004, is entitled to little weight because it pre-dates the MRI evidence from January of 2005, of "the presence of the unusual amount of scar tissue[s] that are ... literally surrounding and encroaching upon the nerve roots involved" (AR, p. 265). Dr. Guerrero also was unaware of the muscle spasm and antalgic gait that the plaintiff exhibited on May 10, 2005 (AR, p. 198). Counsel's argument that Dr. Guerrero's opinion is entitled to less weight than Dr. Davies' remains persuasive.

> 5. The plaintiff is "exaggerating his symptoms and complaints [and] [o]bjective findings and his history of treatment do [not] establish the existence of an impairment which can reasonably cause the degree of limitation he alleges" (AR, pp. 18-19).

No physician has ever indicated that the plaintiff is exaggerating. In his deposition testimony, Dr. Davies repeatedly stated that the plaintiff's medical condition, including partial encasement of the right L5 and right S1 nerve roots by scar tissue, would reasonably be expected to cause the severe and distracting levels of pain in his low back and legs which the plaintiff reports (AR, pp. 212 and 215).

> 6. Although the plaintiff testified that he experiences "constant pain in the low back that radiates into the right leg along the outer side and front side, ... the claimant's testimony conflicts with the entry made by the [PA] on May 10, 2005 [to-wit, the plaintiff] states the right leg symptoms are no longer present. He continue[s] with pain to his lower back and right buttock. No other complaints" (AR, pp. 15-16). The plaintiff's statement to the PA that his leg symptoms are no longer present "is consistent with the study [from Memphis] cited above" (AR, p. 17).

On May 10, 2005, in addition to noting that the plaintiff's "right leg symptoms are no longer present," the PA observed that the plaintiff's "gait is slightly antalgic to the right," which suggests some type of leg problem (AR, p. 198). Furthermore, Dr. Davies acknowledged that the plaintiff's

11

radicular symptoms are subject to "flare-ups" (AR, p. 216). In light of the record as a whole, the most likely explanation for the PA's notation on May 10, 2005, is that, on that date, the plaintiff was experiencing a temporary relief of some but not necessarily all of the symptoms affecting his right lower extremity, not that his condition was completely healed.

> 7. The PA "referred the claimant to pain management on [May 10, 2005] but the claimant did not follow through with that recommendation. At the hearing [on July 26, 2005] however, the claimant alleged he has a pain management appointment in September 2005" (AR, p. 15). "It appears inconsistent for an individual who alleges disabling back and buttock pain to wait four months for treatment that could provide relief. Even if the first available appointment is months away, he has not visited the emergency room for treatment of severe pain, which is readily available" (AR, pp. 17-18).

Generally, before an ALJ may rely upon a claimant's "failure" to follow prescribed medical advice, the claimant "should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment." Social Security Ruling (SSR) 82-59. This is an SSI claim in which the plaintiff proceeded in forma pauperis. According to the plaintiff, "[s]ince Mr. Koebler was injured while working on a chicken farm, there was no workers' compensation coverage whatever. See KRS § 342.650(5)" (Docket Entry No. 10, p. 5). The record reflects that the plaintiff's treatment was interrupted due to "insurance problems" (AR, p. 198). Under these circumstances, it was unfair of the ALJ to dismiss the plaintiff's pain complaints simply because he did not immediately pursue a recommendation to pursue pain management.

> 8. "At the hearing, the claimant admits the physician assistant of Dr. Davies told him that he should quit smoking because smoking was a negative factor in his recovery from low back surgery. The claimant made no changes in his smoking habits to facilitate a better chance of recovery" (AR, p. 18).

It is always medically advisable for people to quit smoking. However, there is no evidence that quitting smoking would change the condition of the plaintiff's spine or the pain and limitations resulting therefrom.

> 9. "[T]he claimant's attorney, at the time of the hearing, acknowledged the claimant has a pending civil lawsuit against the poultry farm/plant for his injuries of December 27, 2003. Complete or near complete recovery from his back surgery would be counter-productive to the success of the litigation [hence] ... the claimant ... may be motivated by secondary gain" (AR, pp. 18-19).

The plaintiff should not be penalized or found to be fabricating a disability claim simply because he filed a civil action against his former employer. It is just as likely that the plaintiff applied for disability because he is genuinely disabled and there was no assurance that he would prevail in his civil action and be adequately compensated.

> 10. "[T]he [deposition] statement of Dr. Davies was not subject to the test of cross-examination and he was not asked to factor in the claimant's failure to promptly follow through with pain management, failure to quit smoking, and to factor in the competing interests of full physical recovery and financial recovery in civil litigation" (AR, p. 18).

It is not the plaintiff's responsibility to ensure that the evidence which he submits that tends to establish his claim of disability is subjected to vigorous cross-examination. The ALJ was free to recontact and question Dr. Davies and/or obtain a consultative medical opinion prior to issuing his decision.

The magistrate judge concludes that the ALJ failed to identify "good reasons" for declining to give "controlling weight" to Dr. Davies' medical opinions as contemplated by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Dr. Davies opinions, as expressed in his deposition testimony on July 18, 2005, are supported by sufficient objective medical data, and there is no contrary substantial evidence. Therefore, Dr. Davies' opinions are entitled to controlling weight. The VE testified that the limitations assigned by Dr. Davies would preclude all full-time work. Therefore, the record adequately establishes the plaintiff's entitlement to benefits.

**Allegedly New and Material Evidence**

In the event the court does not award benefits for the reasons discussed above, the plaintiff argues, in the alternative, that a remand is nevertheless required for a new decision in which the ALJ identifies good reasons for the weight given to two additional items of evidence. The evidence consists of the postoperative MRI report itself, which is dated January 4, 2005, and which we mentioned above as supporting Dr. Davies' deposition testimony, and a letter from Dr. Davies dated August 1, 2005, in which Dr. Davies opined that the plaintiff's condition meets the medical criteria of Listing § 104(A) and/or (B). The evidence is appended to the plaintiff's fact and law summary at Docket Entry No. 10, Exhibit Nos. 5 and 7.

The Commissioner's position is as follows: 1) The evidence was not before the ALJ at the time of the ALJ's decision on August 18, 2005; 2) The evidence must be treated as new and material evidence pursuant to "sentence six" of 42 U.S.C. § 405(g); 3) The plaintiff has failed to establish "good cause" for late submission of the evidence and/or materiality of the evidence; 4) Therefore, the implicit motion for a "sentence six" remand must be denied.

In his written decision, the ALJ stated as follows (AR, p. 15): "While Attorney Housman obtained a statement from Dr. Davies shortly before the hearing and Dr. Davies refers to portions of the MRI in his statement, the actual MRI report has not been submitted to the undersigned for review and is not part of the objective record." The magistrate judge finds and concludes as follows:

1. In light of the ALJ's statement that it was not before him, the MRI report must be treated as "sentence six" evidence.

2. The evidence is immaterial because the substance of the evidence is contained in Dr. Davies' deposition testimony, which was before the ALJ. Cumulative evidence is immaterial. *Young v. Secretary*, 925 F.2d 146 (6th Cir., 1990).

14

3. In a letter to counsel dated September 16, 2005, the ALJ stated that the MRI report should have been "marked as an exhibit or otherwise submitted by your office" (Exhibit No. 6). The plaintiff has failed to establish any "good cause" for not doing as the ALJ suggested.

4. Therefore, the MRI report is not properly before this court, nor is the plaintiff entitled to a remand based thereupon.

The remaining evidence is Dr. Davies' statement that the plaintiff's condition satisfies the medical criteria of Listing § 104(A) and/or (B) (Exhibit No. 5). It is unclear whether the ALJ was aware of the statement prior to his written decision on August 18, 2005. On August 15, 2005, counsel wrote a letter to the ALJ stating that Dr. Davies' statement concerning the Listing was "enclosed" (Exhibit No. 3). The magistrate judge submits that there are three possibilities: 1) The evidence was submitted after the ALJ's decision; 2) The evidence was before the ALJ at the time of his decision, but the ALJ chose not to acknowledge it; 3) The evidence was submitted to the Office of Hearings and Appeals (OHA) prior to the ALJ's decision but it was not forwarded to the ALJ until after his decision.

Unfortunately, it is not possible to determine with certainty which of the foregoing is what happened. It is well-settled that the party seeking a "sentence six" remand bears the burden of showing that it is proper. *Sizemore v. Secretary*, 865 F.2d 709, 711-712 (6th Cir., 1988). However, the undersigned is unaware of any authority for the proposition that the claimant also carries the burden of proof on the threshold issue of whether the evidence was properly before the ALJ prior to issuance of his decision and, hence, should be treated as "sentence six" evidence.

In a letter to counsel dated September 16, 2005, the ALJ did not deny receiving the statement from Dr. Davies concerning the Listing (Exhibit No. 6). On the contrary, the ALJ expressed an intent to "rewrite the decision in this matter in a prompt fashion." In a letter to the Appeals Council dated September 17, 2005, counsel explained the foregoing facts and noted the ALJ's expressed intention to rewrite his decision but nevertheless insisted upon "not miss[ing] any appeal deadlines on behalf of our client" (AR, p. 238). The ALJ never rewrote his decision. The Appeals Council declined to disturb the ALJ's decision. Although admittedly it is a close call, in light of the ALJ's non-denial of his awareness of the existence of Dr. Davies' statement and his expression of intent to rewrite his decision, the magistrate judge concludes that the most likely scenario is the third one identified above, i.e., OHA failed promptly to forward Dr. Davies' statement to the ALJ prior to the ALJ's decision.

Because neither counsel nor the plaintiff has any control over OHA personnel, the magistrate judge will apply something akin to the so-called "mailbox rule" and conclude that the evidence was constructively before the ALJ at the time of his decision. Hence, the ALJ's decision is deficient for failing even to acknowledge Dr. Davies' opinion that the plaintiff's condition satisfies the medical criteria of Listing § 104(A) and/or (B). The ALJ's initial instinct that he was obliged to re-write his decision was well-founded. Accordingly, even if a remand for payment of benefits is not warranted in this case, the magistrate judge concludes that a remand for a new decision discussing Dr. Davies' opinion concerning the Listing is required.

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be REVERSED and that this matter be REMANDED to the Commissioner for calculation and payment of past-due Title II and Title XVI benefits based upon the plaintiff's applications for benefits on or about August 12, 2004, and his alleged onset of disability date of December 27, 2003.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).